## Ephraim Gilmore v. R. R. Bailey and H. H. Richmond, Partners as Bailey & Richmond.

1. BROKERAGE CONTRACTS—*When Broker is Entitled to Commissions.*—Defendant entered into the following agreement with plaintiffs :

"I, E. Gilmore, owner in fee of above property, authorize Bailey & Richmond to bargain and sell the above land at $75 per acre, and agree that I will convey as above, said lands on sale of same. I agree the land shall be left with Bailey & Richmond for sale as above for six months from date hereof. and thereafter until five days of notice of withdrawal in writing. If Bailey & Richmond sell or are instrumental in selling the land, I will pay them a commission of $1 per acre of selling price. I will furnish warranty deed and abstract showing good title in case of sale.

Dated May 15, 1899."

*Held,* that under this agreement, when plaintiffs had found a purchaser who was able and willing to take the land at the specified price, they might contract to sell it to him, allow a reasonable time for defendant to furnish the abstract, make the deed, and for the purchaser to examine them in order to ascertain whether he was getting a good title to the land before the sale should be completed, and were not obliged to require a cash payment.

**Assumpsit.**—Appeal from the Circuit Court of Ford County; the Hon. JOHN H. MOFFETT, Judge presiding. Heard in this court at the November term, 1901. Affirmed. Opinion filed June 30, 1902.

CLOUD, MOFFETT & THOMPSON, attorneys for appellant.

A. L. PHILLIPS, attorney for appellees.

MR. PRESIDING JUSTICE BURROUGHS delivered the opinion of the court.

The appellees, R. R. Bailey and H. H. Richmond, partners under the name of Bailey & Richmond, on January 19, 1901, commenced an action of assumpsit in the Circuit Court of Ford County against appellant, Ephraim Gilmore, alleging that he was indebted to them in the sum of $300 for services which they rendered in procuring a purchaser for 300 acres of his land which he had agreed with them they should sell for him at $75 an acre, they to be paid $1 an acre for so doing.

Appellant pleaded non-assumpsit. The case was tried by jury and resulted in a verdict and judgment in favor of appellees for $300. Appellant having moved for a new trial, which was denied and an exception taken, brings the case to this court by appeal, and to obtain a reversal of the judgment, insists that the court erred in admitting improper and rejecting proper evidence; in giving improper and refusing proper instructions; that the verdict is contrary to the evidence and the law applicable thereto, and that the court erred in denying the motion for a new trial.

It appears by the evidence that appellees are real estate brokers at Gibson City, Ford county, Illinois; that appellant lives in the State of Indiana, where he owns land; and that he also owns a farm of 300 acres in Champaign county, Illinois. On May 15, 1899, appellant and appellees entered into two written agreements concerning the sale of certain of appellant's land by appellees, one of the agreements being for land in Indiana, the other for land in Champaign county, lllinois, the one for the latter being as follows:

"Description: Section 12 and 1, township 22, range 7, Champaign county, Illinois, 300 acres. Details as to improvements, etc. Incumbrance $2,000, due in 1900.

I, E. Kilgore, owner in fee of above property, authorize Bailey & Richmond to bargain and sell the above land at $75 per acre, and agree that I will convey as above, said lands on sale of same. I agree the land shall be left with Bailey & Richmond for sale as above for six months from date hereof, and thereafter until five days of notice of withdrawal in writing. If Bailey & Richmond sell or are

instrumental in selling the land, I will pay them a commission of $1 per acre of selling price. I will furnish warranty deed and abstract showing good title in case of sale. Dated May 15, 1899."

Appellees, having failed to find a purchaser for the lands up to May 25, 1900, on that day wrote appellant a letter as follows:

" Dear Sir: We are revising our lists, and notice the contracts of yours are out, but are good till we get notice of five days. We wish no misunderstanding, however. The Champaign Co., Ill., land is listed at $75 an acre; the Ind. land at 35. Can we consider them good and on the market at that? Have party think can show the Champaign Co. land to, next week. Is it rented for longer than next March ? "

To this letter appellant made no reply, but in September, 1900, Mr. Richmond, of the appellee firm, met appellant on the train going from Chicago to Iowa, and they had a talk in which Mr. Richmond testified appellant inquired whether appellees had sold or had a prospect of selling the land in Champaign county, Illinois; that appellant stated he had received appellee's letter to him of May 25, 1900, and that they should continue to try and sell his lands named in the agreements, but said nothing as to the prices; that Mr. Richmond in that conversation requested appellant to send appellees a plat, showing the location of the tiling on the land in Champaign county, Illinois, which appellant said he would do.

Up to December 26, 1900, appellant had not sent appellees the plat referred to in their conversation on the train, and they on that day sent him a letter by mail as follows:

"Dear Sir: We have party figuring on your 300 acres here, and wish you would send us plat of tiling you spoke of when I saw you on way to Iowa."

To which appellant replied by letter on December 28, 1900, as follows:

" Dear Sir: Enclosed find plat of my farm in Champaign county, showing tiling."

And enclosed the plat referred to.

On January 11, 1901, appellees procured from one Miles S. Rankin, a written contract to purchase the 300 acres of land, which contract is as follows :

" This agreement made this 11th day of January, 1901, between E. Gilmore of ———, Indiana, party of the first part, and Miles S. Rankin. of Champaign county, Illinois, of the second part, witnesseth, that first party hereby sells to second party the following described real estate : 300 acres in sections 1 and 12, in Brown township, Champaign county, Illinois, known as E. Gilmore farm, containing 300 acres, more or less, for the sum of $22,500 or $75 per acre. First party covenants to convey above described premises to second party by a good and sufficient warranty deed executed by first party and wife in due form of law, deed to be delivered to second party on payment being made as herein provided, on or before the 1st of March, 1901.

First party agrees on or before the 1st day of March, 1901, to furnish second party a complete abstract of title to said premises, brought to date, certified by a competent abstractor, showing good title to said premises, free of incumbrance save and except a certain mortgage for $2,000. First party to pay interest on above mentioned $2,000 to March 1, 1901, and allow second party a reasonable opportunity to have abstract examined. Taxes for 1900 to be paid by first party. Possession of premises to be delivered to second party on or before March 1, 1901, subject to lease with Ferguson for 1901, which lease is to be turned over to Rankin, or the rents of the place for 1901. Second party agrees to pay said sum of $22,500, as follows : One thousand cash upon execution of this agreement, receipt whereof is acknowleged, and assume the $2,000 mortgage as part of the purchase money, and the remainder in cash on March 1, 1901, and on receipt of the deed as herein provided.

It is mutually agreed by the parties hereto, that the covenants and agreements herein contained shall extend to and be obligatory upon the heirs, executors and assigns of the respective parties; that time is of the essence of this contract, and that either party hereto who shall fail or refuse to comply with the provisions of this contract, on his part to be performed, shall forfeit and pay to the other party the sum of ——— dollars, which sum is hereby fixed and agreed upon as the liquidated damages to be sustained by either party from failure or default upon the part of the other.

In witness whereof the parties have hereunto set their

Gilmore v. Bailey.

hands and seals, in duplicate, the day and year first above written.

MILES S. RANKIN. [Seal.] "

This contract, and a duplicate, appellees forwarded by mail to appellant with request for him to sign, but they were returned to them because appellant was absent from home. On January 19, 1901, appellant called upon appellees at their office in Gibson City and they requested him to execute the contract for the sale of the land to Rankin, but he refused so to do, stating at the time that he objected to selling it to him for $75 per acre and would not sell it for less than $80 per acre; and claimed that he had told Mr. Richmond when he talked with him on the train, not to sell the land for less than $80 per acre.

When the contract of purchase was signed by Mr. Rankin, he placed in the bank at Gibson City, all the money required to be paid to appellant by the terms thereof upon the latter complying with the contract. And there was no question but that Mr. Rankin was able and willing to take the land on the terms specified in the contract of sale.

Appellant testified that when he talked with Mr. Richmond on the train, he told him that appellees should sell the land for $80 per acre instead of $75 as specified in the agreement between appellees and himself.

The court admitted the written contract of purchase signed by Mr. Rankin over the special objection and exception of appellant, that it provided for the sale of the land on a credit from January 11, 1901, until March 1, 1901, and that the written agreement between appellant and appellees, while authorizing them to sell the land at $75 per acre, did not provide for its sale on credit, the legal effect of which was to authorize the sale for cash only, so that the sale to Rankin was not binding upon appellant for want of authority in appellees to make it.

At the close of appellees' evidence, and again at the close of all the evidence, appellant requested the court to direct the jury peremptorily to find a verdict in his favor, and presented a written instruction to that effect, but the court refused it.

The contention of counsel for appellant in this court as well as in the trial court, is that the written agreement under which appellees were alone authorized by appellant. to sell the land, did not warrant them in selling it to Mr. Rankin on a credit from January 11, 1901, the date of such sale, to March 1, 1901, when the purchase money was, by the terms of the sale, provided to be paid, for which reason appellant was not bound to consummate such sale or to pay appellees anything for their services in making it.

In that view, however, we do not concur, for the reason that it gives too narrow a construction to the intention of the parties as manifested by the terms of the written agreement authorizing the selling of the land. For in it we find that they say in case of sale appellant " will furnish warranty deed and abstract showing good title," from which it is but fair to infer that it was intended when appellees found a purchaser who was able and willing to take the land at the specified price, that they might contract to sell it to him and allow a reasonable time for appellant to furnish the abstract and make the deed, and for the purchaser to examine them in order to ascertain whether he was getting a good title to the land before the sale should be completed.

Appellees found a purchaser in Mr. Rankin on January 11, 1901, and in arranging with him to take the land at the price specified in their agreement with appellant, it was no transgression of the authority given them therein to contract to sell him the land and allow until March 1, 1901, to complete same. For we find there was nothing unreasonable or unusual in the terms fixed in the contract of sale as signed and sealed by the purchaser, which warranted appellant in refusing to complete such sale, and to pay appellees $300 for their services in making it, save and excepting that the contract to sell the land to Mr. Rankin at $75 was in the face of appellant's direction to Mr. Richmond not to sell it at that price, but for $80. Mr. Richmond denied under oath, however, that any such direction was given him by appellant before the contract of sale to Mr. Rankin was

C. & A. Ry. Co. v. City of Carlinville.

made, and the jury and the trial court saw both, and they believed Mr. Richmond's version of that matter, and that was their province, in the absence of anything appearing to indicate that they were biased from passion or prejudice, and nothing of that kind was shown.

The view we have taken of the case as above expressed, renders it unnecessary to otherwise consider or refer to the other errors assigned and urged except that we examined all the rulings of the trial court on the admission and rejection of evidence, and upon the instructions, and find that no prejudicial error was committed against appellant in any of them.

The conclusion reached by the trial court in this case, in our opinion, being the only just one under the evidence and law applicable thereto, the judgment, for that reason, must and will be affirmed.